# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **KIMBERLY HERRING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **6:12-cv-02794-AKK** |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Kimberly Herring ("Herring") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Herring.

### I. Procedural History

Herring filed an application for Supplemental Security Income benefits on February 25, 2009, alleging a disability onset date of April 1, 2003 due to bipolar

disorder, depression, anxiety, seizures, and knee problems. (R. 116, 144, 149). After the SSA denied Herring's claim, she requested a hearing before an ALJ. (R. 104-05, 113-14). The ALJ subsequently denied Herring's claim, (R. 17-36), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-6). Herring then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 9.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(g). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The ALJ properly applied the five step analysis and first determined that Herring has not engaged in substantial gainful activity since February 25, 2009,

and therefore met Step One.[1]  (R. 22).  The ALJ also acknowledged that Herring's knee pain, degenerative disc disease, bipolar disorder, antisocial personality disorder, and history of polysubstance abuse in remission were severe impairments that met Step Two.  *Id*.  The ALJ proceeded to the next step and found that Herring failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three.  *Id*.  Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Herring

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can do simple but not complex tasks, but could maintain attention and concentration for two hours at a time to complete an eight hour day provided all customary breaks are given; contact with the general public and coworkers should be casual; supervision should be non confrontational and supportive; changes to the work setting should be gradual, well explained and infrequent.

(R. 24).  As a result, the ALJ found that Herring is unable to perform any past relevant work.  *Id*. at 31.  Lastly, at step five, the ALJ determined that, "[c]onsidering [Herring's] age, education, work experience, and [RFC], there are jobs that exist in significant number in the national economy that the claimant can

---

[1] Although Herring alleged an April 1, 2003 onset date, the ALJ properly limited his inquiry to the period beginning on Herring's application date.  See 42 U.S.C. § 1382(c)(7) (stating that an application for individual benefits is effective on the first day of the month following the application date).

perform." *Id*. at 32.  Accordingly, the ALJ found that Herring is not disabled.  *Id*. at 33; *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Herring contends that the ALJ erred by treating her February 25, 2009 application as a new claim for benefits and failing to consider whether the SSA erroneously terminated Herring's prior benefits.  *See* doc. 9. Alternatively, Herring contends that the ALJ did not meet his burden "to show some other work [Herring] can perform."  Doc. 9 at 12.  The court discusses these contentions below.

**A.     Termination of Prior Benefits**

Herring asserts that she previously received SSI benefits due to bipolar schizophrenic disorder, but that the SSA suspended those benefits in 2007 when Herring was incarcerated.  Doc. 9 at 2-3; (R. 44, 44).  Under the regulations, the SSA will resume the benefits of a claimant whose benefits were previously suspended due to incarceration "the earliest day of the month in which a recipient is no longer a resident of a public institution."  20 C.F.R. § 416.1325(b). However, the reinstatement applies only to those incarcerated for less than a year. The SSA will terminate the benefits of any claimant who is incarcerated for 12 months or more.  20 C.F.R. § 416.1335.

Purportedly, Herring was incarcerated from December 1, 2007 to November 2008, resulting in the suspension and apparent termination of her prior benefits. Doc. 9 at 9; (R. 41). Herring contends that her attorney raised this issue before the ALJ and noted that the SSA needed further proceedings to determine whether it properly terminated Herring's prior benefits and, accordingly, whether the SSA improperly required Herring to submit a new application for benefits. *Id*. Additionally, Herring contends that the ALJ should have further developed the record regarding this issue by requesting further information about Herring's prior benefits, incarceration, and purported termination of benefits. Doc. 9 at 10.

Based on a review of the record, this court lacks jurisdiction to make a determination on this claim. Herring failed to submit any evidence supporting her contention that she previously received SSI benefits that the SSA suspended due to her incarceration. Herring also failed to request that the ALJ obtain any such evidence or argue the SSA improperly required Herring's new SSI application under 20 C.F.R. § 416.1325(b).[2] Most importantly, Herring failed to ask the SSA to reopen her prior benefits case to determine whether the SSA erroneously

---

[2] The record shows that Herring's attorney mentioned Herring's incarceration and prior benefits briefly at the hearing before the ALJ, but failed to further discuss the issue or indicate that the prior case needed to be reopened prior to the ALJ making a determination based on Herring's new application. *See* (R. 40-41, 44).

terminated her benefits.  In other words, Herring has not yet obtained an "initial determination" or "final decision" regarding the termination of her prior benefits. Given that the regulations state clearly that only "initial determinations" that have become final through exhaustion of the administrative process outlined in 20 C.F.R. § 416.1400 are subject to administrative and judicial review, and that "termination of [a claimant's] benefits" is a determination for the SSA to make initially, 20 C.F.R. § 416.1402(b), this court lacks jurisdiction to hear the suspension/termination issue.  *See* 42 U.S.C. § 405(g) (stating that the court only has power to enter a judgment "upon the pleadings and transcript of the record"). Moreover, because Herring failed to adequately raise this issue at her hearing, the ALJ's failure to address it or to request further information is not erroneous.

**B.     Determining Whether a Claimant Can Perform Other Work**

Herring alternatively contends that the ALJ failed to meet his burden at step five of the disability analysis, which requires the ALJ to determine "whether the claimant is unable to perform any work in the national economy." *McDaniel*, 800 F.2d at 1030; 20 C.F.R. § 404.1520(g).  Specifically, Herring argues that the ALJ did not properly question the vocational expert,"ignored the [vocational expert's] [] responses to the hypothetical questions presented," and that it is "impossible" for someone "who only went as far as the eighth grade and does not read and write

very well [to] earn[] her living as a document preparer" as the vocational expert opined Herring could. Doc. 9 at 13-14.

Under the regulations, an ALJ may rely upon a vocational expert's testimony as substantial evidence regarding a claimant's disability status if the ALJ poses a hypothetical question to the expert that includes all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). At the hearing the ALJ asked the vocational expert to

> assume a hypothetical person of Ms. Herring's age, education, and work experience. And [] assume that this hypothetical person could do . . . simple but not complex tasks, but could maintain attention and concentration for two hours at a time and complete an eight-hour day, provided all customary breaks were given. Contact with the general public and coworkers should be casual. Supervision should be non-confrontational and support. And changes to the work setting should be gradual, well-explained, and infrequent. . . . Are there any jobs in the local or national economy that could be performed within the confines of these limitations?

(R. 62-63). The vocational expert opined that a person with such limitations could perform light unskilled work as a night cleaner, motel housekeeper, routing clerk, or document preparer. *Id*. at 63-64. The ALJ went on to ask the vocational expert whether an inability to maintain persistence and pace consistently for two hours at a time throughout a 40-hour work week due to manic episodes of bipolar disorder or routinely missing one to two days a month would preclude such work. *Id*. at 64-

65. The vocational expert stated that these additional limitations would "result in [the claimant's] dismissal in competitive work." *Id*. at 65.  In response, Herring's attorney asked the vocational expert if the claimant could still perform the proposed jobs if she also had a sedentary limitation. *Id*. at 65-66.  The vocational expert responded that the claimant would still be able to perform work as a document preparer. *Id*. at 66.

A review of this testimony demonstrates that the ALJ posed adequate hypotheticals to the vocational expert and did not ignore the expert's responses. Herring does not challenge the ALJ's RFC finding, which does not include a sedentary restriction or an inability to concentrate for two hours at a time.  *Id*. at 24.  Since the ALJ did not include these restrictions in Herring's RFC, the ALJ was not required to consider the vocational expert's opinion regarding those additional limitations.  Instead, the ALJ's first hypothetical directly reflects his RFC finding.  *Compare* (R. 24), *to* (R. 62-63).  Additionally, the ALJ specifically instructed the vocational expert to consider Herring's education in the hypothetical analysis, which sufficiently accounted for Herring's eighth grade education. While Herring may disagree with the vocational expert's ultimate finding, the ALJ posed a hypothetical including all of Herring's impairments and, therefore, properly relied on the expert's analysis in his disability determination. *Wilson*,

284 F.3d at 1227. Accordingly, the ALJ's determination at step five of the disability analysis is consistent with the vocational expert's testimony and thus is supported by substantial evidence.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Herring is not disabled is supported by substantial evidence and proper legal standards were used in making this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 30th day of April, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE